# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# —BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § § | CRIMINAL NO. B-07-608 |
| SAMUEL JASON DIAZ | | |

# MEMORANDUM OPINION AND ORDER

Defendant Samuel Jason Diaz ("Diaz") seeks to suppress all evidence obtained in the search of his home. (Docket No. 31). Diaz alleges the affidavit supporting the search warrant lacked probable cause and was "bare bones." (*Id*.) The government responded, stating the affidavit sets out probable cause and that the federal agent reasonably relied on the warrant in good faith. (Docket No. 33).

This Court employs a two-step process when reviewing the validity of a search warrant. *United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004). The Court typically first determines whether the good-faith exception to the exclusionary rule applies, and if not, the Court then turns to whether the magistrate had a substantial basis for finding probable cause. *Id*. A court should address the probable cause issue if the case involves a "novel question of law whose resolution is necessary to guide future action by law enforcement and magistrates." *See United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). This Court finds that the factual situation set out by the search warrant in this case involves a novel question of law, therefore the Court will address whether the warrant and support affidavit establish probable cause and then turn to the issue of whether the federal agent relied on the warrant in good faith.

1

## II.     PROBABLE CAUSE

### A.     Probable Cause Standard

The Fourth Amendment bars officials from undertaking search and seizures absent individualized suspicion. *Chandler v. Miller*, 520 U.S. 305, 308, 117 S.Ct. 1295 (1997). A search "must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342 (1979).

A magistrate judge issuing a search warrant must answer the "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317 (1983). Probable cause is based on factual and practical considerations and probabilities, rather than technical requirements or hard certainties. *Gates*, 462 U.S. at 231 (citing *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302 (1949)). Probable cause is therefore "a fluid concept–turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. The *Gates* court reaffirmed the use of the totality-of-the-circumstances approach to determine whether probable cause exists rather than the use of specific tests. *Id*. at 230-31.

Neither certainty nor a preponderance of the evidence is required to establish probable cause. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Gates*, 462 U.S. at 246, 103 S.Ct. 2317); *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004). Probable cause, however, means more than "mere suspicion." *See United States v. Gordon*, 580 F.3d 827, 832-33 (5th Cir. 1978).

Judicial review of the sufficiency of an affidavit should not take the form of *de novo* review. *Gates*, 462 U.S. at 236. A magistrate judge's determination of probable cause should be "paid great deference by reviewing courts." *Id*. (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 583 (1969)). So long as the magistrate had a substantial basis for concluding "that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id*. at 236 (quoting *Jones v. United States*, 362 U.S. 256, 21, 80 S.Ct. 725 (1960)). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id*. at 237, n.10 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741 (1965)).

### B.    Probable Cause in Child Pornography Cases

This Court "must simply decide whether there is a 'fair probability' that, based upon the facts set forth and the inferences from them, [the defendant's] computer would house child pornography . . . ." *United States v. Kelley*, 482 F.3d 1047, 1055 (9th Cir. 2007); *see Gourde*, 440 F.3d at 1071; *Froman*, 355 F.3d at 889-90. While there is no specific test for when probable cause exists in child pornography cases, *see Gates*, 462 U.S. at 230-31, this Court finds it instructive to review the factors used by other courts in cases involving subscriptions to child pornography websites and search warrants for defendants' homes.

> 1.    *Probable Cause from a Paid Subscription to a Child Pornography Website*

In *United States v. Gourde*, the Ninth Circuit held that an affidavit accompanying a search warrant showing that a defendant took intentional steps to join a members-only website whose primary purpose is the illegal trade of child pornography establishes probable cause to search the

3

defendant's home. 440 F.3d at 1070. This reasoning has been followed or mirrored by a number of courts. *See United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006); *United States v. Meek*, 177 Fed. Appx. 576, 577-78 (9th Cir. 2006); *United States v. Payne*, No. 2:07-CR-00226, 2007 WL 3133932, *1-2 (D.N.J. Oct. 25, 2007); *United States v. Standefer,* No. 3:06-CR-02674, 2007 WL 2301760, *6 (S.D. Cal. Aug. 8, 2007); *State v. Gralinski*, 2007 WL 2481032 (Wis. Ct. App. Sept. 5, 2007); *see also United States v. Kelley*, 482 F.3d 1047, 1049 (9th Cir. 2007); *United States v. Martin*, 426 F.3d 68, 74-77 (2d Cir. 2005).

The affidavit in *Gourde* stated the defendant subscribed to a website called Lolitagurls.com. *Gourde*, 440 F.3d at 1070. The primary content of Lolitagurls.com was images of child pornography. *Id*. Subscribers to the website therefore had access to hundreds of illegal images. *Id*.

The court then turned to the defendant's subscription to the website, holding that the defendant's "status as a member manifested his intention and desire to obtain illegal images." *Gourde*, 440 F.3d at 1070. Joining the website required a single submission of personal data and credit card information, however, this "only could have been intentional and [was] not insignificant." *Id*. "[M]embership [was] both a small step and a giant leap." *Id*. To the court, this evidence "left little doubt that [the defendant] had paid to obtain unlimited access to images of child pornography knowingly and willingly." *Id*.

The court rested its holding on a solid "triad of facts" from the warrant supporting a finding of probable cause: (i) the website had illegal images; (ii) the defendant intended to have and wanted access to these images; and (iii) these images were almost certainly retrievable from his computer if he ever received or downloaded them. *Gourde*, 440 F.3d at 1071. The court concluded it was common sense, based on the totality of the circumstances, that someone who paid for access to a

4

website that purveyed child pornography probably had viewed or downloaded such images onto his computer. *Id.* (citing *Gates*, 462 U.S. at 246, 103 S.Ct. 2317). Based on the facts above, the magistrate judge could make a reasonable inference that the defendant received or downloaded images and would have them at his home. *Id*.

### 2. *Probable Cause from an Unpaid Subscription to a Child Pornography E-Group*

The Fifth Circuit has not addressed the situation in *Gourde*: whether a paid subscription to a website whose primary purpose was the distribution of child pornography would establish probable cause. In *United States v. Froman*, however, the Fifth Circuit addressed an affidavit based on a person's unpaid subscription to the Candyman e-group, and held that the affidavit supported reasonable cause. 355 F.3d 882, 890-91 (5th Cir. 2004).

The affidavit in *Froman* established that: (i) the defendant subscribed to and was a member of the Candyman e-group; (ii) the sole purpose of the Candyman e-group was to receive and distribute child pornography; and (iii) Froman had several screen names registered to his name that reflected an interest in child pornography. *Froman*, 355 F.3d at 890. The Fifth Circuit held it was "common sense that a person who voluntarily joins a group such as Candyman, remains a member of the group for approximately a month without canceling his subscription, and uses screen names that reflect his interest in child pornography, would download such pornography and have it in his possession." *Id.* at 890-91. The Fifth Circuit held that those facts and inferences sufficiently established probable cause to search the defendant's home for further evidence of child pornography. *Id*. at 891.

The *Froman* decision has been criticized by three district courts, who have held that merely subscribing to the Candyman e-group was insufficient to support a search warrant for a subscriber's

5

home.  *United States v. Kunen*, 323 F. Supp. 2d 390, 400 (E.D.N.Y. 2004); *United States v. Strauser*, 274 F. Supp. 2d 1135, 1144-45 (E.D. Mo. 2003); *United States v. Perez*, 247 F. Supp. 2d 459, 482 (S.D.N.Y. 2003).

A person looking to subscribe to the Candyman e-group only saw the message, "[t]his group is for People [sic] who love kids" when arriving at the opening webpage.  *See Perez*, 247 F. Supp. 2d at 482.  This opening page did not have any images, nor the words "child pornography."  *Id.* at 482.  A person could have subscribed to the website not knowing what was on the site.  *Strauser*, 274 F. Supp. 2d at 1145.

Further, there was no allegation in the *Perez* affidavit that the Candyman e-group engaged "only or even primarily" in illegal activity.  *Perez*, 247 F. Supp. 2d at 482.  The Candyman e-group offered several activities that were legally protected, such as "chatting" and answering survey questions.  *Id*.  All three courts concluded that membership in the Candyman e-group was insufficient to establish probable cause for a search warrant.  *Kunen*, 323 F. Supp. 2d at 400; *Strauser*, 274 F. Supp. 2d at 1145; *Perez*, 274 F. Supp. 2d at 482.  These courts did not address the broader question of whether a subscription to a website whose contents were solely child pornography would be sufficient to support a warrant to search the defendant's home.  The general holding of *Froman* does not appear to face dissent in a situation where the defendant subscribed to a website where the primary purpose was trading, collecting and distributing child pornography.

### C.   The Search Warrant Application

The application for the warrant to search Diaz's residence was supported by a signed, sworn affidavit from Immigration and Customs Enforcement ("ICE") Senior Special Agent Maria Gilbert.

(*See* Aff. ¶ 1). The affidavit provided a detailed discussion of: (i) background information concerning the trafficking of child pornography using computers and the Internet; (ii) the nature of ICE's investigation of websites containing images of child pornography advertising for a members-only website Pedoland; (iii) the multi-step subscription process and monthly fee required to become a member of Pedoland; and (iv) evidence establishing that Defendant subscribed to Pedoland.

          1.    *Computers and Child Pornography*

The affidavit recited Agent Gilbert's training and experience related to cases involving the sexual exploitation of children, including the investigation of child pornography cases. (Aff. ¶ 2). Based on her experience, Agent Gilbert is familiar with methods used by individuals engaged in the collection and distribution of child pornography. (Aff. ¶ 3). Collectors "obtain child pornography . . . by ordering and/or obtaining it by discreet contact with other individuals and underground businesses that have child pornography collections." (*Id.*)

As a result of her training and experience, Agent Gilbert also provided a profile of people who collect child pornography, including information that: "collectors of child pornography do not dispose of the pornography" and that collectors "go to great lengths to maintain their child pornography." (Aff. ¶ 8). Further, collections of child pornography tend to grow over time. (*Id.*) Collectors of child pornography typically maintain and possess child pornography in secure locations, "most often at a residence or other secure location." (Aff. ¶ 8(k)).

The affidavit provides background on how computers and the Internet permit individuals to trade and collect child pornography without risk of easy identification. (Aff. ¶ 8(e)). The affidavit also gave a background on how images can be stored and transmitted by computer. (Aff. ¶¶ 10-15).

"[T]aken together, the increased sense of security which a computer affords and the known desire to retain child pornography for long periods of time, provide probable cause to believe that computer images will be retained for as long as other types of child pornography, if not longer." (Aff. ¶ 9(f)).

        2.      *The Investigation of the Pedoland Website and its Accompanying Advertising Websites*

The affidavit then described the investigation by the ICE Cyber Crimes Center ("C3") into Pedoland and its advertising websites. (Aff. ¶¶ 18-19). Advertising websites for Pedoland contained images of pre-pubescent boys and girls engaged in various sexual acts with adults. (Aff. ¶¶ 19, 20). C3's investigation identified over 300 such advertising websites associated with the members-only website Pedoland. (Aff. ¶ 20). All of the advertising websites investigated by C3 were identical. (*Id.*)

Each advertising website consisted of four webpages: an opening page with links to three other pages: a security page, preview page, and a "join page." (Aff. ¶ 19). All four pages contained images of child pornography. (*Id.*) An individual who clicked the "Join now" button was directed to the payment page. (Aff. ¶ 19). On this page, the person could either pay with an e-gold currency account or pay by credit card. (*Id.*) A person opting to pay by credit card first entered all of his or her credit card information along with contact information, including his or her e-mail address. (*Id.*)

An e-mail was then sent to the person's e-mail account he or she just provided on the "Join Now" page. (Aff. ¶ 20). The e-mail informed the subscriber that there were more steps in the verification process and that to complete the transaction the person needed to follow a hyperlink contained in the e-mail and submit his or her credit card information for a second time. (*Id.*) The hyperlink directed the subscriber to a secure PayPal website to complete the transaction. (*Id.*)

After payment was received via PayPal, the website sent the subscriber a second e-mail with the Uniform Resource Locator[1] for Pedoland, a user name and a password giving the subscriber to access to Pedoland for thirty (30) days. (Aff. ¶ 20).

C3 purchased access to Pedoland as described above using one of the advertising websites. (Aff. ¶ 20). The Pedoland website had approximately 6.4 GB of content, consisting of a user forum, over seven thousand JPG images, approximately 300 computer video files, and approximately 28 ZIP archive files. (*Id.*)

### 3. *Diaz's Subscription to Pedoland*

ICE obtained transaction records from PayPal indicating that on March 26, 2005, Diaz purchased access to Pedoland through one of the advertising websites using a MasterCard. (Aff. ¶ 21). The PayPal records also revealed that Diaz used the e-mail account sdiaz2@rgv.rr.com and provided an address in Harlingen, Texas as part of the transaction. (*Id.*)

Agent Gilbert sought information on this Harlingen address by checking records of the Texas Law Enforcement Telecommunication System, the Treasury Enforcement Communication System, Accurint, Texas Drivers' License records, and by speaking with Diaz's neighbors. All sources indicated that the address used as a part of the purchase of a subscription to Pedoland was Diaz's home address in Harlingen, Texas. (Aff. ¶¶ 22, 23, 24, 25).

Based on all the information stated above, Magistrate Judge John William Black issued a warrant on June 15, 2006, authorizing the search of Diaz's house for evidence of child pornography. Diaz argues the affidavit fails to state probable cause.

---

[1] A Uniform Resource Locator is the unique address for a website on the Internet. *See Uniform Resource Locator*, *available at* http://www.answers.com/uniform+resource+locator&r=67.

**D.     Diaz's Paid Subscription to Pedoland Creates Probable Cause to Search His Home**

The affidavit against Diaz presents the following evidence and permits the following inferences: (i) Diaz accessed an advertising website containing child pornography; (ii) this website advertised for Pedoland; (iii) Diaz used the "Join Page," which also contained child pornography and only images of child pornogprahy, to obtain a subscription to Pedoland; (iv) Diaz provided an e-mail address and his home address as a part of the verification process to join Pedoland; and (v) after subscribing to Pedoland, Diaz had access to all the images, videos, and ZIP files on the Pedoland website.

While neither party noted nor objected to the fact that the affidavit did not expressly state the images found on Pedoland were child pornography, this Court will now address this issue. (*See* Aff. ¶¶ 18-21). A magistrate judge may make reasonable and common-sense inferences based on the facts established by a search warrant affidavit. *United States v. Kelley*, 482 F.3d 1047, 1055 (9th Cir. 2007); *see Gourde*, 440 F.3d at 1071; *Froman*, 355 F.3d at 889-90. Here, the affidavit provides facts and inferences demonstrating that Diaz accessed an advertising website with multiple images of child pornography. While on this website, Diaz clicked the "Join Page" which also contained multiple images of child pornography. This website advertised for Pedoland. This Court holds that because a person accessing Pedoland had to go through an advertising website for Pedoland containing child pornography and the website name "Pedoland" indicates content associated with pedophilia and child pornography, that the Magistrate Judge could have made a reasonable and common-sense inference that the images and videos found on the Pedoland website were child pornography.

10

This Court now turns to whether the totality of the circumstances as set out by the facts in the warrant and the reasonable and common-sense inferences drawn from those facts demonstrate probable cause. The affidavit demonstrates that Diaz accessed the advertising website with multiple images of child pornography and accessed the "Join Page" which also contained multiple images of child pornography.

Diaz entered a credit card number and his personal information at the "Join Page." Then he was sent an e-mail requiring him to verify the information he had just sent. He had to click on a hyperlink contained in the e-mail to access a PayPal payment page. On the PayPal page, Diaz again had to enter a credit card number and his personal information, including an e-mail address and his home address. Only then was Diaz sent an e-mail with instructions on how to access Pedoland, a members-only website which reasonable inferences show to contain many images and videos of child pornography.

The combination of a website containing images of child pornography advertising for another child pornography website coupled with the multi-step process necessary to subscribe to that website demonstrates Diaz's intention and desire to obtain illegal images of child pornography. *See Gourde*, 440 F.3d at 1070. Like the court in *Gourde*, this Court also finds that this evidence leaves "little doubt that [the defendant] had paid to obtain [] access to images of child pornography knowingly and willingly." *See id.*

The evidence and inferences from the affidavit, therefore, are stronger than the evidence provided in the *Froman* affidavit. *See Froman*, 355 F.3d at 890. Unlike *Froman* where the defendant was only required to click on a subscribe link or send an e-mail to the group administrator to join the Candyman e-group, here, Diaz had to submit personal information, including his home

address, an e-mail address and a credit card number. *See id*. at 885. Diaz then had to submit that information again after following the instructions on an e-mail sent to the address that Diaz originally submitted on the advertising website. The intent demonstrated by the elaborate subscription process to Pedoland is much stronger than the intent shown by more minimal steps necessary to join the Candyman e-group in *Froman*.

This Court further finds that applying the evidence of Diaz's intent to the paragraphs in the affidavit providing a background profile on collectors of child pornography shows that Diaz fits the "collector profile." *See Gourde*, 440 F.3d at 1072. Finding that an individual fits the "collector profile" for collecting child pornography supports a finding of probable cause. *See, e.g., id.*; *United States v. Lacy,* 119 F.3d 742, 746 (9th Cir. 1997); *Martin,* 426 F.3d at 75.

This search warrant therefore falls into the "triad of facts" that have been held to support a finding of probable cause: (i) the website had illegal images; (ii) the defendant intended to have and wanted access to these images; and (iii) these images were almost certainly retrievable from his computer if he ever received or downloaded them. *See United States v. Gourde*, 440 F.3d 1065, 1070-71 (9th Cir. 2006). It is common sense that someone who paid for access to a website that purveyed child pornography probably had viewed or downloaded such images onto his computer. *Id.* Analyzing the totality of the circumstances provided by the evidence in the affidavit and reasonable inferences taken therefrom, and taking into account the deference to be accorded to warrants and the determinations of magistrate judges, this Court finds that the affidavit provides a substantial basis for the Magistrate Judge's finding of probable cause to search Diaz's home. Defendant's Motion to Suppress is hereby **DENIED**.

**II.     GOOD-FAITH EXCEPTION AND "BARE BONES" AFFIDAVIT**S

The good-faith exception provides that the evidence obtained from a search will not be excluded where probable cause for a search warrant is based on incorrect information, but the agent's reliance on the truth of the information was objectively reasonable. *Froman*, 355 F.3d at 888 (citing *United States v. Leon*, 468 U.S. 897, 919-20, 104 S.Ct. 3405 (1984)). This Court reviews the reasonableness of an officer's reliance upon a warrant issued by a magistrate *de novo*. *Satterwhite*, 980 F.2d at 231.

The exception does not apply where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render the official's belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11, 95 S.Ct. 225 (1975) (Powell, J., concurring in part)). When a warrant is supported by more than a "bare bones" affidavit, officers may rely in good faith on the warrant's validity. *Satterwhite*, 980 F.2d at 231.

"Bare bones" affidavits contain wholly conclusory statements which lack the facts and circumstances from which a magistrate can independently determine probable cause. *Satterwhite*, 980 F.2d at 231. The information must provide the magistrate with facts, and not mere conclusions, from which a magistrate judge could determine probable cause. *Id*.

The affidavit supporting the warrant in the instant case was not a "bare bones" affidavit. It contained detailed information from Agent Gilbert regarding the investigation of the Pedoland website and its accompanying advertising web sites that contained images of child pornography as well as evidence and inferences demonstrating that Diaz subscribed to the members-only child pornography website, Pedoland, through one of its advertising websites which also contained child pornography. Since the affidavit was not "bare bones" and the affidavit was not so lacking in indicia of probable cause as to render the agent's believe in the existence of probable cause entire

unreasonable, the officers relied in good faith on the validity of the affidavit and the search warrant the good-faith exception applies. Defendant's motion to suppress is also **DENIED** pursuant to the good-faith exception.

    Signed this 20th day of December, 2007.

                                              Andrew S. Hanen
                                              United States District Judge